UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DWAYNE EDWARD ABRAHAM

                    Plaintiff,

       v.

OREGON DEPARTMENT OF
CORRECTIONS; MAX WILLIAM,
Director of ODOC; DAN JOHNSON,
Superintendent of PCRI; STAN CZERNIAK,
Assistant Director of ODOC; MS.
BALLARD, Counselor at PRCI; DON
WILLIAM, Program Service Manager, PRCI;
GINGER MARTIN, Assistant Director of
ODOC Transitional Services,

                    Defendants.

No. 2:13-cv-00827-AC

FINDINGS AND
RECOMMENDATIONS

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Dwayne Edward Abraham ("Abraham") filed suit against the Oregon Department

FINDINGS & RECOMMENDATION - 1                                    [RMD]

of Corrections ("ODOC"), three ODOC employees, and three employees of Powder River Correctional Institution ("PRCI") (collectively "Defendants"). Defendants now move for summary judgment on all of Abraham's claims. For the reasons discussed herein, summary judgment should be granted in Defendants' favor.

### Factual Background

In February 2004 Abraham pleaded guilty to one count of delivery of a controlled substance and one count of endangering the welfare of a minor. (Decl. Of Dwayne Edward Abraham ("Abraham Decl.") Ex. 1 at 1). He was sentenced to forty months in prison and thirty-six months of post-prison supervision. (Abraham Decl. Ex. 1 at 2.) Abraham's sentencing document also provided he "may be considered for . . . [the] alternative incarceration program" ("AIP"). (Abraham Decl. Ex. 1 at 2.) The AIP is a "highly structured corrections program that includes intensive interventions, rigorous personal responsibility and accountability, physical labor, and service to the community." OAR 291-062-0110(1). If an inmate successfully completes the program, he is immediately released into the community on post-prison supervision even if the inmate has not served the entire term to which he was sentenced. OAR 291-062-0170

Abraham alleges he participated in the program for approximately three months before he was abruptly removed from the program. (Compl. at 4.) When he wrote a letter appealing his removal from the AIP, he was told that he was ineligible for the program due to an elevated score on the STATIC-99 test, an actuarial tool used to assess an inmate's risk for recidivism and future criminality. (Abraham Decl. Ex. 2.) When Abraham was sentenced Oregon regulations provided that , "[i]nmates who score a six or higher on the Static 99 will not be accepted into an AIP." OAR 291-062-0140(4) (2011), *invalidated as unconstitutionally vague by Smith v. Dep't of Corr.*, 243 Or.

App. 45, 51 (2011).

Abraham exhausted his avenues of administrative appeal and, together with another inmate, filed suit in Oregon state court appealing the administrative decision. In that suit, Abraham claimed that OAR 291-062-0140(4) was unconstitutionally vague and resulted from an unlawful delegation of rulemaking authority. *Smith*, 243 Or. App. at 47. The Oregon Court of Appeals agreed "with some of petitioners' arguments," and in a May 25, 2011, opinion held the regulation invalid. *Id.* The court found that the agency which adopted OAR 291-062-0140(4) did not adequately incorporate the STATIC-99 test by reference into the regulation. *Id.* at 50.

On May 15, 2013, Abraham filed this lawsuit, alleging violations of his Fifth and Fourteenth Amendment rights to due process, his Eighth Amendment right to be free from cruel and unusual punishment, and a state-law claim for false imprisonment.

### Preliminary Procedural Matter

Abraham does not plead his claims for relief with particularity, but Abraham filed *pro se* so the court must construe his claims liberally. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). His complaint purports to allege claims only under 42 U.S.C. § 1983, 42 U.S.C. § 12101, and 29 U.S.C. § 794. However, § 12101 et seq. is the Americans With Disabilities Act, and § 794 prohibits discrimination in administrating federal grant programs. Abraham has alleged no disability nor has he alleged he was under consideration for receipt of a federal grant. The court construes Plaintiff's first and third claims for relief as § 1983 claims alleging violations of Abraham's Fifth, Eighth, and Fourteenth Amendments. Because Abraham discusses the "elements of the common law tort of False Imprisonment" in his second claim for relief and alleges supplemental jurisdiction under 28 U.S.C. § 1367, the court construes Abraham's second claim for relief as a state-law claim for false

imprisonment instead of a claim under the ADA or for discrimination under federal grant programs.

*Legal Standard*

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  The moving party bears the burden of establishing that no issue of fact exists and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the movant meets his burden, the nonmovant must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted).  On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

*Discussion*

Defendants argue they are entitled to summary judgment on three grounds.  First, they claim Abraham's claims are time-barred under the Oregon statute of limitations.  Second, they claim that all defendants are insulated from liability by the Eleventh Amendment and principles of qualified immunity.  Third, they contend they are entitled to judgment as a matter of law on Abraham's state-law claim because the Oregon Tort Claims Act does not consent to suit in federal court.

I.  Statute of Limitations

Defendants argue that Abraham's claims are barred by Oregon's two-year statute of limitations for claims alleging civil rights violations and false imprisonment.  Because the events which gave rise to Abraham's claims occurred six years before he filed this suit, Defendants contend Abraham's claims are time-barred and should be dismissed.  Abraham contends that the statute of

FINDINGS & RECOMMENDATION - 4                                    [RMD]

limitations should be legally and equitably tolled during the period of time prior to the Oregon Court of Appeals's decision in *Smith v. Dep't of Corr.*

The statute of limitations in a § 1983 suit is the same as provided under state law for person-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Oregon, tort claims for "false imprisonment, or for any injury to the person or rights of another" must be brought within two years of when the plaintiff's claims accrue. OR. REV. STAT. § 12.110. In *Berry v. Branner*, the Oregon Supreme Court applied the common law "discovery rule" to a battery claim brought more than two years after the battery occurred, and held that a cause of action does not accrue under § 12.110 until "the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by defendant." 245 Or. 307, 308 (1966). Subsequent decisions have extended the "discovery rule" to the remaining causes of action articulated in § 12.110, including those brought under 42 U.S.C. § 1983. *Whalen v. Am. Med. Response Nw, Inc.*, 256 Or. App. 278, 280-285 (2013), *citing T.R. v. Boy Scounts of Am.*, 344 Or. 282, 288 (2008).

"[A] § 1983 cause of action for damages attributable to an unconstitutional . . . sentence does not accrue until the . . . sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). Abraham does not contend that his sentence, as originally articulated in his sentencing documents, was unconstitutional. Instead, his claim rests on the premise that, by denying him access to an early release program based on an unconstitutional administrative regulation, the state administered his sentence in an unconstitutional manner and denied him a constitutional liberty interest under the due process clause of the Fifth and Fourteenth Amendments.[1] Nonetheless, the

---

[1]There is Supreme Court caselaw which suggests Abraham's claim is not cognizable as a § 1983 claim. *See Edwards v. Balisok*, 520 U.S. 641 (1997) (holding that a prisoner's § 1983 claim, which alleged deprivation of "early release credits" through an unconstitutional process,

[RMD]

rules governing accrual of claims relating to an unconstitutional sentence apply similarly. Just as a claim challenging the legitimacy of an entire sentence does not accrue until that sentence has been invalidated, a claim which alleges an otherwise legitimate sentence has been administered in an unlawful manner cannot proceed until a court has found unlawful the administration of that sentence.

Here, Abraham did not know, nor could he reasonably have known, that he suffered a deprivation of his constitutional rights until the Oregon Court of Appeals held OAR 291-062-0140(4) unconstitutional. The Oregon Court of Appeals invalidated the regulation on which the government based its decision to deny Abraham participation in the AIP, thereby accruing Abraham's § 1983 claim, on May 25, 2011. *Smith*, 243 Or. App 45, 45 (2011). Because Abraham's claim did not accrue until May 25, 2011, the limitations period did not expire until May 25, 2013. Thus, when Abraham filed this claim on May 15, 2013, he was not time-barred from doing so. Accordingly, Abraham's claim is timely and not barred by the statute of limitations.[2]

## II. Immunity From § 1983 Suit

Defendants argue that, even if Abraham's claims are not time-barred, the ODOC is immune from suit under the Eleventh Amendment to the U.S. Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign state.

---

could be brought in federal court only as a *habeas corpus* claim). However, Defendants do not raise this argument and the court need not address it, as this case is decided on other grounds.

[2]Because the court concludes Abraham's claim accrued less than two years prior to the date he filed this cause of action, the court need not address his equitable tolling and equitable estoppel arguments.

FINDINGS & RECOMMENDATION - 6                                    [RMD]

Although the text of the amendment appears to divest federal courts only of diversity jurisdiction for cases brought against a state, the Supreme Court has interpreted the Eleventh Amendment to mean that a state, as "a sovereign entity in our federal system . . . [is] not amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996), quoting *Hans v. La.*, 134 U.S. 1, 13 (1890). Thus, "states may not be sued in federal court unless they consent to it in unequivocal terms or unless congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

A. ODOC and ODOC employees

"To temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute. '" *Seminole Tribe of Fla.*, 517 U.S. at 56, *quoting Dellmuth v. Muth*, 491 U.S. 223, 227-228 (1989). The Ninth Circuit has repeatedly held that 42 U.S.C. § 1983 does not unequivocally abrogate a state's sovereign immunity, and may not be used to recover damages against a state, a state agency, or government officers acting within their official capacities. *Brown v. Ore. Dep't of Corr.*, ---- F.3d ----, No. 11-35628, 2014 WL 1687758, at *5 (9th Cir. 2014); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (Eleventh Amendment immunity applies to state agencies, including the department of corrections). *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007) (Eleventh Amendment bars § 1983 damages claims against state officials in their official capacity because the damages award would be satisfied out of the State treasury).

ODOC and PRCI are state organizations protected from suit under § 1983 by the Eleventh

Amendment. Further, the individually named defendants in this case are all employees of the State

of Oregon and Abraham does not allege that any of these state employees acted in their personal

capacity. Therefore, all of the defendants named in this case are immune from suit under the

Eleventh Amendment.

Abraham argues that he may nonetheless succeed in his case pursuant to *Monell v. New York

City Dep't of Soc. Serv.*, 436 U.S. 658 (1978). *Monell* does not apply here. In *Monell*, the Court

held, after extensive analysis of § 1983's legislative history, that Congress did not intend to insulate

local governments and municipalities from suit when "the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers." *Id.* at 690-90. However, *Monell* does

not extend to allow similar suits for damages against states, state agencies, or certain state officers

and agents. *Id.* Further, neither party claims the State of Oregon has consented to be sued in this

case. Because the Eleventh Amendment insulates state officers from § 1983 liability, summary

judgment should be granted in favor of ODOC, ODOC employees, and PRCI employees with regard

to the first and third claims of Abraham's Complaint.

B. Qualified Immunity

Even if the Eleventh Amendment does not insulate the real-person defendants from suit in

this case, summary judgment is nonetheless appropriate because those defendants possess qualified

immunity from suit. Government officials performing discretionary governmental functions are

generally entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Qualified immunity shields these government employees from suit "as long as their actions could

reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* The

FINDINGS & RECOMMENDATION - 8                                        [RMD]

liability of the defendant generally turns on the "'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639. In *Saucier v. Katz*, 533 U.S. 194 (2009) the United States Supreme Court articulated a two-pronged test to determine whether qualified immunity applies. First, the court must determine whether the official violated the Plaintiff's constitutional rights. Second, the court must analyze whether the law governing that right was clearly established. *Id.* at 201. However, in *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court determined that, although beneficial, the order of the two-step *Saucier* test is not mandatory.

The court will, as it must during summary judgment, draw all inferences in Abraham's favor. Even assuming that Defendants violated Abraham's liberty interest under due process clause the Fifth and Fourteenth Amendments for unlawfully depriving him of an opportunity for early release from incarceration, Abraham cannot prove that his rights were "clearly established." The relevant inquiry in whether a plaintiff's rights were clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. Here, it would not have been clear to a "reasonable officer" that denying Abraham access to the AIP was a constitutional violation. During Abraham's state-court lawsuit against ODOC, the Oregon Court of Appeals invalidated the rule which formed the basis of Defendants' justification for denying Abraham's participation in the AIP. However, the court of appeals based its decision on the technical ground that the state agency which adopted OAR 291-062-0140(4) failed to incorporate the STATIC-99 test into the regulation or attach it as an exhibit. As a result, it was void for vagueness. A reasonable officer or agent applying OAR 291-062-0140(4) to AIP eligibility decisions would not have reason to know the regulation was invalid due to such a legal technicality.

Because a reasonable officer would not have known that denying Abraham participation in the AIP constituted unlawful conduct, Abraham's due process right was not "clearly defined."[3]  As a result, the individually named defendants in this action are entitled to qualified immunity from Abraham's § 1983 claims, and the court should dismiss Abraham's first and third claims as against all defendants.

III.  Jurisdiction Over Plaintiff's State Law Claims for False Imprisonment

Remaining after the court dismisses Abraham's first and third claims for relief is Abraham's claim for false imprisonment.  28 U.S.C. § 1367 permits federal courts to exercise supplemental subject matter jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Where the court dismisses all claims over which it has original jurisdiction, it has the discretion to "decline to exercise supplemental jurisdiction over" remaining claims before it only under the court's supplemental jurisdiction.  The court no longer has original jurisdiction over a claim which forms the same case or controversy as Abraham's state-law claim and Abraham does not persuasively argue that the court should exercise its discretion to hear his claim for false imprisonment.  Therefore, the court should decline to exercise subject-matter jurisdiction and dismiss Abraham's second claim for relief.

*Conclusion*

For the aforementioned reasons, Defendants' Motion for Summary Judgment (Dkt. No. 42) should be GRANTED as to Abraham's first and third claims for relief.  Further, the court should

---

[3]Abraham bases his Eighth Amendment claim on the same facts as his Fifth and Fourteenth Amendment claims.  Thus, the court's analysis is identical for his third claim for relief.

DISMISS Abraham's second claim for relief for lack of subject-matter jurisdiction.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due August 27, 2014. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this _13th_ day of August, 2014.

_____
JOHN V. ACOSTA
United States Magistrate Judge

FINDINGS & RECOMMENDATION - 11                                    [RMD]